68 F.3d 484
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Tony BENCOMO, Defendant-Appellant.
 No. 94-2263.
(D.C.No. CIV-94-316-LH)
 United States Court of Appeals, Tenth Circuit.
 Oct. 23, 1995.
 
 Before KELLY, SETH, and HENRY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant-appellant Tony Bencomo appeals from the denial of his motion under 28 U.S.C. 2255 to withdraw his guilty plea based on his attorney's alleged ineffectiveness. Because the evidence supports a finding that Mr. Bencomo's plea was made voluntarily, we affirm.
 
 
 3
 Tony and Theresa Bencomo were charged with participating in a conspiracy to distribute more than 1,000 kilograms of marijuana and several counts of money laundering. Mr. Bencomo retained attorney Gonzales to represent him, initially for $15,000. Several days later, Mr. Gonzales introduced Mr. Bencomo to another attorney, Mr. Macias, and persuaded him to retain Mr. Macias to represent his wife. Mr. Macias indicated that the entire defense of Mrs. Bencomo would cost $15,000. Attorneys Gonzales and Macias undertook to jointly represent the Bencomos, sharing information and defense duties.
 
 
 4
 Mr. and Mrs. Bencomo pled not guilty to the charges, claiming that the large amount of money they had allegedly laundered was actually an inheritance from Mr. Bencomo's father in Mexico. Mr. Gonzales initially considered this was a strong defense, and hired an investigator, Mr. Harris, to interview witnesses and gather evidence. Mr. Gonzales and Mr. Macias also claimed to have reviewed hundreds of pages of discovery and evidence. At no time did Mr. Macias meet with his client, Mrs. Bencomo, outside the presence of her husband, his attorney, or her husband's sister.
 
 
 5
 After his investigation, Mr. Gonzales felt that there were too many "holes" in the inheritance defense, and recommended that Mr. Bencomo enter into a plea bargain. Mr. Bencomo eventually pled guilty to two counts of money laundering and received an eight-year sentence. Mr. Macias also recommended that Mrs. Bencomo plead guilty to one count of money laundering, for which she would serve a three-year sentence. The parties had a separate agreement with the government that if they provided information leading to the arrest of certain fugitives, their sentences would be shortened and Mrs. Bencomo would serve her sentence either at home or in a halfway house. Although the Bencomos provided the requested information, no arrests were made, and their sentences were not reduced.
 
 
 6
 Six weeks after the sentencing hearing, Mr. and Mrs. Bencomo sent a letter to the judge requesting permission to withdraw their pleas on the ground that they were involuntary. Mr. Bencomo claimed that his attorney coerced him into pleading guilty by telling him he had no chance of winning, that Mexican documents were not admissible evidence, that his witnesses would be arrested if they testified, and that the attorney would withdraw if Mr. Bencomo did not plead guilty. R. I, doc. 1. Mr. Bencomo also claimed that his agreement to the plea was conditioned on the government's consent that his wife would serve her sentence at a halfway house or under house arrest. He claimed that Mr. Gonzales told him the government had agreed to this condition, and that he pled guilty believing that his wife would not be incarcerated. Id. Mrs. Bencomo relied on the grounds raised by her husband, and, in addition, claimed that her attorney was ineffective by not giving her a defense separate from that of her husband. R. II at 5.
 
 
 7
 An evidentiary hearing was held before a magistrate judge. The magistrate judge recommended that Mr. Bencomo's motion to withdraw his plea be denied, finding that his plea was made knowingly and voluntarily and that his inheritance defense was not a viable defense. The magistrate judge recommended granting Mrs. Bencomo's motion to withdraw her plea, however, finding her attorney ineffective in not giving her a separate defense; in not responding to her phone calls; in representing that $15,000 was adequate to pay for her defense; in negotiating a plea for more time than she would have received if convicted of money laundering alone; and in failing to review the plea or presentence report with his client. The district court adopted the magistrate judge's recommendations, and this appeal followed.
 
 
 8
 Mr. Bencomo argues that the district court erred in concluding that his plea was knowing and voluntary because it did not address his ineffective assistance claim and because the court's decision was inconsistent with its ruling permitting his wife to withdraw her plea. He argues that the record shows ineffective assistance as a matter of law, and that he should, therefore, be permitted to withdraw his plea.
 
 
 9
 A claim that counsel provided constitutionally ineffective assistance presents a mixed question of law and fact which we review de novo. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir.1995). The district court's underlying factual findings are accepted as true unless clearly erroneous. Id.
 
 
 10
 To demonstrate ineffective assistance, a defendant must show that: (1) his attorney's performance was constitutionally deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Miles, 61 F.3d at 1474. In the plea context, this requires a showing that counsel's advice fell outside the range of competence demanded of attorneys in criminal cases, and that, but for counsel's error, there is a reasonable probability that the defendant would not have pleaded guilty and would have gone to trial. Hill v. Lockhart, 474 U.S. 52, 56, 59 (1985).
 
 
 11
 Here, the district court did not make an express finding that Mr. Bencomo's attorney rendered effective assistance. The court did, however, note that Mr. Bencomo's involuntariness claim rested on his attorney's alleged ineffectiveness in misrepresenting the terms of the plea and in ignoring an available defense. R. I, doc. 9. The court's subsequent finding that Mr. Bencomo's plea was knowing and voluntary necessarily rested on a finding that his attorney was not constitutionally ineffective.
 
 
 12
 The district court's conclusion regarding the viability of the inheritance defense is supported by the record. Other than the investigator's opinion that the defense was good, the record contains no evidence, such as a copy of the alleged will or of the videotaped interview with witness Fernandez, to demonstrate the viability of the defense. Its viability was further undermined by Mr. Bencomo's inability to identify a Mexican court which probated his father's will, by the fact that none of his siblings received an inheritance, and by Mr. Gonzales' testimony that the inheritance defense was full of "holes." As Mr. Bencomo did not have a viable defense, his attorney's strategic decision to recommend a plea bargain fell within the range of professional competence, and was not constitutionally deficient. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable....").
 
 
 13
 The record also supports the court's rejection of Mr. Bencomo's claim that his attorney lied about the terms of the plea agreement. Attorney Gonzales testified that he never told Mr. Bencomo that his wife would not go to prison under the plea. R. II at 131. Further, Mr. Bencomo acknowledged to the court that he had not received any promises or assurances, other than those in the plea agreement, to induce his guilty plea. Appellee's Addendum, Transcript of Plea Proceedings at 7, 9. Such testimony "constitute[s] a formidable barrier in any subsequent collateral proceeding[ ]." Blackledge v. Allison, 431 U.S. 63, 74 (1977).
 
 
 14
 The district court's determination that Mr. Bencomo made his plea knowingly and voluntarily is not inconsistent with its ruling that Mrs. Bencomo should be permitted to withdraw her plea. The court's finding that Mrs. Bencomo's attorney was ineffective rested on her attorney's failure to provide her with a defense separate from her husband, and did not require a finding that the inheritance defense was viable. The court's ruling, in fact, was premised on the theory that Mrs. Bencomo may have had any number of defenses other than that claimed by her husband, but because her husband controlled her defense, such separate defenses were not investigated. See R. II at 5, 105. The court also apparently concluded that Mrs. Bencomo had been prejudiced by her attorney's negotiation of a plea for more time than she would have received had she actually been convicted on the money laundering charge. See R. I, doc. 9.
 
 
 15
 The court's finding that Mr. Macias was ineffective in representing that $15,000 was sufficient to cover Mrs. Bencomo's defense does not require a conclusion that Mr. Gonzales was ineffective for charging the same amount. After investigating the case, Mr. Gonzales recognized that $15,000 was inadequate, and he informed Mr. Bencomo that an additional $60,000 in fees would be required. R. II at 20-21. Although these fees were not paid, Mr. Gonzales' reevaluation of the work necessary to prepare an adequate defense bolsters the court's conclusion as to his competence.
 
 
 16
 Mr. Bencomo's remaining arguments are without merit. His misunderstanding of the terms of the cooperation agreement did not affect the voluntariness of his guilty plea. The fact that Mr. Macias participated in Mr. Bencomo's defense did not deprive Mr. Bencomo of effective assistance of counsel. As discussed above, Mr. Gonzales provided Mr. Bencomo with effective assistance, and the entire case investigation and plea negotiation were oriented towards his defense.
 
 
 17
 The judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470